# Exhibit 1

## Joint Stipulation of Collective Action Settlement and Release

## JOINT STIPULATION
## OF COLLECTIVE ACTION SETTLEMENT AND RELEASE

Subject to approval by the United States District Court for the Northern District of Ohio, Eastern Division ("District Court"), Plaintiffs Scott Lucas and Lester Allen, individually and on behalf of themselves and the Opt-In Plaintiffs (defined herein), and Defendants Miller Products, Inc. ("Miller Products") and MPI Labels of Baltimore, Inc. ("MPI Labels") (collectively, "Defendants"), agree to the terms of this Joint Stipulation of Settlement and Release.

### DEFINITIONS

1. "Action" shall mean the civil action in the United States District Court for the Northern District of Ohio, Eastern Division entitled *Scott Lucas, et al. v. Miller Products, Inc., et al*, Case No. 4:21-cv-02355.

2. "Representative Plaintiffs" shall mean Scott Lucas and Lester Allen.

3. "Defendants" shall mean Miller Products, Inc. and MPI Labels of Baltimore, Inc. and all of their respective former, current and prospective officers, directors, employees, agents, insurers, parents, predecessors, successors, subsidiaries, representatives, assigns and related and affiliated entities.

4. "Effective Date" means the first day after which the Court approves the Settlement.

5. "Plaintiffs" shall consist of Representative Plaintiffs and the "Opt-In Plaintiffs."

6. "Opt-In Plaintiffs" consist of the 47 employees identified in **Exhibit 1** who joined the Action following the distribution of a Court-authorized notice. The Representative Plaintiffs are included in that list.

7. "Parties" shall mean the Plaintiffs and Defendants, and "Party" shall mean any one of the Parties.

8. "Plaintiffs' Counsel" is Shannon M. Draher of Nilges Draher, LLC. "Defendant's Counsel" is Kimberly L. Hall and Shannon E. Kreuer of Critchfield, Critchfield & Johnston, Ltd.

9. "Settlement" or "Agreement" shall mean this Joint Stipulation of Settlement and Release.

### RECITALS

10. On December 17, 2021, Representative Plaintiffs filed the Action alleging that MPI Label Systems violated the Fair Labor Standards Act ("FLSA"), the Ohio Minimum Fair Wage Standards Act, the Maryland Wage Payment and Collection Law and the Maryland Wage and Hour Law by failing to pay Representative Plaintiffs and allegedly similarly situated employees

Page 1 of 11

all of their overtime pay. Defendants answered the Representative Plaintiffs' Complaint and denied any liability or wrongdoing of any kind.

11. Representative Plaintiffs filed the First Amended Collective Action Complaint in the Action on March 2, 2022, against Defendants, alleging that Defendants violated the FLSA by failing to pay Representative Plaintiffs and allegedly similarly situated employees all of their overtime pay.

12. Defendants answered the Representative Plaintiffs' Amended Complaint and denied any liability or wrongdoing of any kind.

13. Plaintiffs believe that the Action is meritorious based on alleged violations of the FLSA, and that the Action is appropriate for collective treatment. Defendants deny these allegations. The Parties agree that bona fide disputes exist between the Parties, including whether Plaintiffs are entitled to their claimed overtime compensation under FLSA or any other federal, state or local laws or regulations.

14. The Court granted the Parties' Joint Proposed Stipulation for Conditional Certification on April 12, 2022.

15. The Parties agreed to attempt an early resolution of the Action. To that end, Defendants produced payroll data necessary for an alleged damages calculation. Defendants also performed their own calculation of alleged damages.

16. The Parties engaged in mediation on August 11, 2022, during which the parties reached a settlement of the Action.

17. It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all Released Claims for the Release Period.

18. Plaintiffs' Counsel represents that they have conducted a thorough investigation into the facts of this Action, and have diligently pursued an investigation of Plaintiffs' claims against Defendants, including researching the applicable law and the potential defenses. Based on their own independent investigation and evaluation, Plaintiffs' Counsel is of the opinion that the Settlement is fair, adequate and reasonable and is in the best interest of the Plaintiffs in light of all known facts and circumstances, including the risk of significant delay and Defendants' defenses. Defendants agree that the Settlement is fair, adequate and reasonable.

19. This Settlement represents a compromise of disputed claims. Nothing in this Settlement is intended or will be construed as an admission by Defendants that Plaintiffs' claims in the Action have merit or that Defendants have any liability to Plaintiffs on those claims.

## SETTLEMENT PAYMENTS

20. **Total Settlement Amount:** The Total Eligible Settlement Amount is ▮▮▮▮, which sum will cover: (a) all of the Individual Payments to the Plaintiffs; (b) Representative Plaintiffs' Service Payments; (c) Plaintiffs' Counsel's attorneys' fees and expenses; and (4) the

cost of settlement administration. The Total Settlement Amount does not include the Defendants' share of the employer withholdings for all payments made as wages.

21. **Settlement Payments to Group Members:** ▉▉▉▉ of the Total Settlement Amount will be divided into individual payments to the Plaintiffs as set forth in **Exhibit 1**.

22. **Calculation of Individual Payments:** Individual payments to the Plaintiffs are based on each Opt-in Plaintiff's allegedly underpaid overtime and liquidated damages during the period of December 17, 2018, through December 17, 2021. Each Plaintiff will receive a minimum payment of ▉▉▉.

The individual payments are provided in **Exhibit 1**.

23. **Representative Plaintiffs' Payments:** In addition to Scott Lucas' individual payment, a Service Payment of ▉▉▉ of the Total Settlement Amount will be paid to Scott Lucas for executing a Confidential Settlement and General Release Agreement. In addition to Lester Allen's individual payment, a Service Payment of ▉▉▉ of the Total Eligible Settlement Amount will be paid to Lester Allen for executing a Confidential Settlement and General Release Agreement.

24. **Plaintiffs' Counsel's Attorneys' Fees and Expenses:** Plaintiffs' Counsel will seek an order from the Court approving the payment of their fees for services, not to exceed one-third of the Global Settlement Fund, and their litigation expenses. Defendants will not contest this application. Any attorneys' fees and litigation expenses approved by the Court will be paid from the Total Settlement Amount. This Settlement is not conditioned upon the Court's approval of Plaintiffs' Counsel's request for fees and litigation expenses in any amounts, and any amounts not approved by the Court will revert to the Net Settlement Fund. The Settlement Administrator will wire Plaintiffs' Counsel's Court-approved attorneys' fees and litigation expenses **twenty-one (21) days** after the Effective Date.

### SETTLEMENT ADMINISTRATOR'S DUTIES AND RESPONSIBILITIES

25. The Parties agree to retain a Settlement Administrator responsible for:
    a. Establishing a Global Settlement Fund as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.*;
    b. Issuing all funds from the Global Settlement Fund;
    c. Determining and finalizing the tax withholding amounts and employer payroll tax amounts for Plaintiffs, as applicable;
    d. Preparing, printing, and disseminating the Notice of Settlement to all Plaintiffs;
    e. Promptly apprising the Parties' Counsel of the activities of the Settlement Administrator, timely responding to inquiries of the Parties or their Counsel, and copying the Parties' Counsel on material correspondence;
    f. Mailing Settlement Award checks to all Plaintiffs;

  g. Wiring Plaintiffs' Counsel's attorneys' fees and litigation expenses;
  h. Mailing the Service Award to Representative Plaintiff;
  i. Reissuing and remailing Settlement Award checks to Plaintiffs who do not receive or misplace their Settlement Award checks;
  j. Mailing reminder postcards to Plaintiffs who have not cashed their Settlement Award checks **sixty (60) days** before the check void date and again **thirty (30) days** before the check void date;
  k. Issuing IRS Forms W-2, 1099, and W-9 (if required) for all payments to each Plaintiff;
  l. Ascertaining current addresses for each Notice of Settlement and Settlement Award check returned as undeliverable;
  m. Referring to Plaintiffs' Counsel all inquiries by Plaintiffs the Settlement Administrator cannot resolve and/or which involve matters not within the Settlement Claim Administrator's duties specified in this Agreement;
  n. Promptly notifying the Parties' Counsel of any material requests or communications made by any Plaintiff who receives the Notice of Settlement;
  o. Maintaining adequate records of its activities, including the date of the mailing of the Notices of Settlement, receipt of returned mail, and other communications and attempted communications with Plaintiffs, and providing the Parties' Counsel with weekly reports regarding the same;
  p. Confirming, in writing to the Parties' Counsel its completion of the administration of this Settlement and retaining copies of all endorsed Settlement checks; and
  q. Such other tasks as customarily and regularly performed by a settlement administrator and as the Parties mutually agree.

### SETTLEMENT ADMINISTRATION TIMELINES

26. Within **seven (7) days** of the Effective Date, the Settlement Administrator shall open an interest-bearing bank account, which will hold the Global Settlement Fund.

27. Within **fourteen (14) days** of the Effective Date, Plaintiffs' Counsel shall provide the Settlement Administrator with an Excel spreadsheet listing the names and last known addresses for the Plaintiffs. Defendants shall provide the Settlement Administrator with an Excel spreadsheet listing the social security numbers for the Plaintiffs.

28. Within **fourteen (14) days** of the Effective Date, Defendants shall deposit $67,500.00 into the interest-bearing bank account opened by the Settlement Administrator.

29. Within **twenty-eight (28) days** of the Effective date, the Settlement Administrator shall mail to all Plaintiffs the Notice of Settlement and Settlement Award check. If any Notice of Settlement and/or Settlement Award check is returned as undeliverable, the Settlement Administrator will promptly attempt to locate such Plaintiff by any reasonable and legally acceptable means, and, if located, shall promptly mail an additional Notice of Settlement and/or Settlement Award check to such person. The Settlement Administrator will also promptly notify Plaintiffs' Counsel of any returned Notices of Settlement and/or Settlement Award checks.

30. The Settlement Administrator shall mail reminder postcards to Claimants who have not cashed their Settlement Award checks Award checks **sixty (60) days** before the check void date and again **thirty (30) days** before the check void date.

### THE PAYMENT OF SETTLEMENT AWARDS

31. The Settlement Administrator will provide the Parties' Counsel with a list of all of the Plaintiffs and their Settlement Awards no later than **seven (7) days** after the Settlement Awards are mailed to Plaintiffs.

### GLOBAL SETTLEMENT FUND AND TAXES

32. The Global Settlement Fund will be established as a "Qualified Settlement Fund" within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, the Treas. Reg. Section 1.468B-1, *et seq.,* and shall be administered by the Settlement Administrator, subject to the ultimate authority of the Court.

33. The Settlement Administrator shall serve as Trustee of the Global Settlement Fund and shall act as a fiduciary with respect to the handling, management, and distribution of the Global Settlement Fund, including the handling of tax-related issues and payments. The Settlement Administrator shall act in a manner necessary to qualify the Global Settlement Fund as a Qualified Settlement Fund and to maintain that qualification. The Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree to any relation-back election required to treat the Global Settlement Fund as a Qualified Settlement Fund from the earliest possible date.

34. The Parties recognize the wage and non-wage awards to the Plaintiffs will be subject to applicable tax withholding and reporting and employer payroll taxes. The Settlement Administrator shall calculate the employer's share of payroll taxes related to Settlement Award payments treated as wage income and, upon receipt of that calculation, Defendants will, as directed by the Settlement Administrator, deposit into the interest-bearing bank account opened by the Settlement Administrator a payment separate from the Global Settlement Fund to pay the employer's share of payroll taxes related to Settlement Award payments treated as wage income.

35. All taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Global Settlement Fund, if any, including any taxes or tax detriments that may be imposed on Defendants with respect to income earned for any period during which the Global Settlement Fund does not qualify as a "Qualified Settlement Fund" for federal and state income tax purposes (hereinafter "Settlement Fund Taxes"), and expenses and costs incurred in connection with the operation and implementation of this paragraph (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) any returns described herein or otherwise required to be filed pursuant to applicable authorities) (hereinafter "Settlement Fund Tax Expenses") shall be paid out of the Global Settlement Fund. Further, Settlement Fund Taxes and Settlement Fund Tax Expenses shall be treated as a cost of the administration of the Global Settlement Fund. The Parties agree to

cooperate with the Settlement Administrator, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions set forth in this Section.

36. The Settlement Administrator shall satisfy all federal, state, local, and other reporting requirements (including any applicable reporting with respect to attorneys' fees and other costs subject to reporting) and shall pay from the Global Settlement Fund any and all taxes, as well as any other obligations with respect to the payments or distributions not otherwise addressed in this Agreement.

### TAX TREATMENT OF THE SETTLEMENT AWARDS

37. For tax purposes, the Parties agree Settlement Awards will be: (a) 50 percent taxable, wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings under federal and state law; and (b) 50 percent taxable, non-wage income paid under IRS Form 1099. Defendants will make all required employer contributions with respect to any portions of the Settlement Awards paid as wages under IRS Form W-2, and these contribution amounts will not be deducted from the Global Settlement Fund.

### REMAINDER OF THE GLOBAL SETTLEMENT FUND

38. All Settlement Award checks that are not negotiated by a Plaintiff within **one-hundred (180) days** of the of date issuance or reissuance, as noted on the Settlement Award checks mailed by the Settlement Administrator to the Plaintiffs, shall be null and void; the associated funds shall not be redistributed among the Plaintiffs, any such funds shall be revert back to Defendants.

### RELEASE OF CLAIMS

39. **Released Claims:** Subject to approval of this Settlement by the United States District Court for the Northern District of Ohio, Eastern Division Plaintiffs hereby forever release Defendants from all individual, class, and/or collective federal and state wage-and-hour claims, whether known or unknown, that were or could have been brought under the FLSA (as to all Plaintiffs), Ohio Rev. Code 4111 et seq. (as to all Plaintiffs employed/formerly employed in Ohio), Illinois State law (as to all Plaintiffs employed/formerly employed in Illinois), Tennessee State law (as to all Plaintiffs employed/formerly employed in Tennessee), Connecticut State law (as to all Plaintiffs employed/formerly employed in Connecticut), North Carolina State law (as to all Plaintiffs employed/formerly employed in North Carolina), Texas State law (as to all Plaintiffs employed/formerly employed in Texas), California State law (as to all Plaintiffs employed/formerly employed in California) and/or other Federal, State, and Local law whether the claims are brought or could have been brought in Court or through arbitration pursuant to a collective bargaining agreement, that were asserted in the Action or that relate to, or arise from, the Defendants' alleged failure to pay overtime compensation to Plaintiffs, including but not limited to claims for unpaid wages, unpaid overtime compensation, compensatory damages, liquidated damages, punitive damages, or any other item of damages, interest, attorneys' fees, and expenses and agree that any payments approved by the Court will be the full, final and complete payment of all attorneys' fees, costs and expenses associated with their representation in the

Action. Defendants shall have no additional liability for any fees and costs associated with the Action.

In addition, Representative Plaintiffs hereby release all claims against Defendant as set forth in their respective Confidential Settlement and General Release Agreements.

40. **Released Period:** The Released Period shall mean the period commencing three years prior to the date the Action was filed, through and including the date on which the Court approves the Settlement.

41. **Release of Attorneys' Fees and Expenses:** The payment of attorneys' fees and expenses to Plaintiffs' Counsel includes all of the attorneys' fees and expenses incurred to date and to be incurred in documenting the Settlement, securing Court approval of the Settlement, and obtaining a dismissal of the Action. In consideration for these attorneys' fees and expenses, Plaintiffs' Counsel waives any and all claims to any further attorneys' fees and expenses in connection with the Action.

42. **Effect of Final Judgment.** The entry of final judgment in the Action shall release all claims set forth in this section of the Settlement.

## APPROVAL AND DISMISSAL OF THE ACTION

43. **Cooperation:** The Parties will agree to cooperate and take all steps necessary and appropriate to obtain approval of the Settlement by the District Court, to effectuate its terms, and to dismiss the action with prejudice.

44. **Fair, Adequate and Reasonable Settlement:** The Parties will agree that the Settlement is fair, adequate, and reasonable, and will so represent to the District Court.

45. **Joint Motion for Approval of Settlement:** Within seven days of the execution of this Agreement, the Parties will jointly move the District Court for entry of an order, proposed and attached as **Exhibit 2** to the Parties' Joint Motion For Approval of Settlement, granting approval of the Settlement, approving the form, content, and method of distribution of the notice to the Plaintiffs, approving the amounts payable to Plaintiffs and Plaintiffs' Counsel, and entering judgment dismissing the Action with prejudice.

46. **Dismissal with Prejudice of the Action:** Upon entry of the District Court's approval order, the Action shall be dismissed with prejudice and final judgment shall be entered, with each Party bearing its own costs.

47. **Continuing Jurisdiction:** The Parties agree to move for the Court to retain continuing jurisdiction to construe, interpret, and enforce the provisions of this Agreement; to supervise the administration and distributions from the Global Settlement Fund; and to hear and adjudicate any dispute or litigation arising from, or related to, this Agreement, or issues of law and facts asserted in the Action.

## PARTIES' AUTHORITY

48. The respective signatories to the Settlement represent that they are fully authorized to enter into this Settlement and bind the respective Parties to its terms and conditions.

## MUTUAL FULL COOPERATION

49. The Parties and their respective counsel agree to cooperate fully with each other to accomplish the terms of this Settlement, including but not limited to, execution of such documents and such other actions as may reasonably be necessary to implement the terms of this Settlement. The Parties shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by order of the Court, or otherwise, to effectuate the terms of this Settlement.

## CONFIDENTIALITY

50. Defendants desire and intend to have this Agreement not be filed on the District Court's docket. Defendants will file a motion to file this Agreement under seal. Plaintiffs agree not to oppose Defendants' motion to file this Agreement under seal. However, the Parties agree that this Agreement will be binding on the Parties notwithstanding any further decision of the District Court on the motion to file this Agreement under seal. If the District Court ultimately denies Defendants' motion to file this Agreement under seal, the Parties agree that this Agreement will be filed in its original non-redacted form, and such filing will not be a violation of any confidentiality provision in this Agreement. In addition, the Parties agree that reference to this Agreement in approval documents (including the JOINT MOTION FOR FINAL APPROVAL document to be filed with the District Court) is also not a violation of any confidentiality provision in this Agreement and is necessary to obtain final approval and resolution of the Action in its entirety.

## NO PRIOR ASSIGNMENTS

51. The Parties and Plaintiffs' Counsel represent, covenant and warrant that they have not directly or indirectly, assigned, transferred, encumbered or purported to assign, transfer or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or right released and discharged in this Settlement.

## NO ADMISSION OF LIABILITY

52. Nothing contained in this Settlement shall constitute or be construed or deemed as an admission of liability, culpability, negligence or wrongdoing on the part of Defendants, and Defendants deny any such liability. Each Party has entered into this Settlement with the intention to avoid further disputes and litigation with the attendant inconvenience and expenses.

## NO ADMISSION OF CLASS LIABILITY

53. The Parties agree that this Agreement does not constitute, shall not be construed to be, and shall not be cited in or be admissible in any proceeding as evidence of a determination or admission that any group of similarly-situated employees exists to maintain a collective action under the FLSA or a class action under Rule 23 of the Federal Rules of Civil Procedure.

### CONSTRUCTION

54. The Parties agree that the terms and conditions of this Settlement are the result of lengthy, intensive arms-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any Party by reason of the extent to which any Party participated in the drafting of this Settlement.

### MODIFICATION

55. This Agreement may not be changed, altered or modified, except in writing, signed by counsel for the Parties, and approved by the Court. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by counsel for the Parties. Notwithstanding the foregoing sentences, without further Order of the Court, the Parties may agree in writing to extensions of time to carry out any of the provisions of this Agreement.

### INTEGRATION CLAUSE

56. This Settlement contains the entire agreement between the Parties, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, relating to the resolution of the Action, are merged in this Settlement. No rights under this Settlement may be waived except in writing signed by the Parties.

### BINDING ON ASSIGNS

57. This Settlement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors and assigns.

### COUNTERPARTS

58. This Settlement may be executed in counterparts, and may be signed electronically via PDF. When each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement, which shall be binding upon and effective as to all Parties. Electronic and facsimile transmissions of this Settlement shall be deemed originals.

### BREACH

59. If either Party breaches any of the terms and conditions of this Settlement, the non-breaching Party shall be entitled to reasonable attorneys' fees and expenses incurred to enforce the terms and conditions contained herein.

## JURISDICTION

60. The parties will request that the Court expressly retain jurisdiction to enforce the terms of the Settlement, including the notice administration, addition of Opt-In Party Plaintiffs and distribution process.

## GROUP SIGNATORIES

61. Representative Plaintiffs execute this Settlement on behalf of themselves and in their representative capacity on behalf the Plaintiffs. It is agreed that it is burdensome to have all of the Plaintiffs execute this Agreement. This Agreement shall have the same force and effect as if each Plaintiff executed this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: 09/09/2022

SCOTT LUCAS

By: _Scott W.J._

Its: _____
Representative Plaintiff, Individually
and on Behalf of the Plaintiffs

Dated: _____

LESTER ALLEN

By: _____

Its: _____
Representative Plaintiff, Individually
and on Behalf of the Plaintiffs

Dated: _____

MILLER PRODUCTS, INC.

By: _____

Its: _____

Page **10** of **11**

## JURISDICTION

60.     The parties will request that the Court expressly retain jurisdiction to enforce the terms of the Settlement, including the notice administration, addition of Opt-In Party Plaintiffs and distribution process.

## GROUP SIGNATORIES

61.     Representative Plaintiffs execute this Settlement on behalf of themselves and in their representative capacity on behalf the Plaintiffs.  It is agreed that it is burdensome to have all of the Plaintiffs execute this Agreement.  This Agreement shall have the same force and effect as if each Plaintiff executed this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: _____          SCOTT LUCAS

                                 By: _____

                                 Its: _____
                                 Representative Plaintiff, Individually
                                 and on Behalf of the Plaintiffs

Dated:  09/01/2022               LESTER ALLEN

                                 By: _Lester Allen_____

                                 Its: _____
                                 Representative Plaintiff, Individually
                                 and on Behalf of the Plaintiffs

Dated: _____          MILLER PRODUCTS, INC.

                                 By:_____

                                 Its:_____

## JURISDICTION

60.  The parties will request that the Court expressly retain jurisdiction to enforce the terms of the Settlement, including the notice administration, addition of Opt-In Party Plaintiffs and distribution process.

## GROUP SIGNATORIES

61.  Representative Plaintiffs execute this Settlement on behalf of themselves and in their representative capacity on behalf the Plaintiffs. It is agreed that it is burdensome to have all of the Plaintiffs execute this Agreement. This Agreement shall have the same force and effect as if each Plaintiff executed this Agreement.

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

Dated: _____

SCOTT LUCAS

By: _____

Its: _____
Representative Plaintiff, Individually
and on Behalf of the Plaintiffs

Dated: _____

LESTER ALLEN

By: _____

Its: _____
Representative Plaintiff, Individually
and on Behalf of the Plaintiffs

Dated: 9-1-22

MILLER PRODUCTS, INC.

By: /s/ [signature]

Its: President

Page **10** of 11

Dated: 9-1-22                MPI LABELS OF BALTIMORE, INC.

By: _____

Its: President

# Exhibit 1

## Individual Payments

| Last Name | First Name | Emp Dist. Amount |
|---|---|---|
| Allen | Lester | ▮ |
| Lucas | Scott | ▮ |
| DeBoard | Christina | ▮ |
| Hazelwood | Dana | ▮ |
| McGrath | Ezekiel | ▮ |
| Aguirre | Guadalupe | ▮ |
| Barker | Brandon | ▮ |
| Colross | Charles L. | ▮ |
| Garth | Robert M. | ▮ |
| Jones | Jonathan D. | ▮ |
| Miller | Michelle | ▮ |
| Orr | Travis | ▮ |
| Aubin | Beverly | ▮ |
| Best | Brandon | ▮ |
| Blackwelder | David L. | ▮ |
| Harmanson | Roderick | ▮ |
| Hydrick | Timothy A. | ▮ |
| Macon | Anthony | ▮ |
| Malone | Shawn | ▮ |
| Martinez | Theodore | ▮ |
| Morrison | Barbara | ▮ |
| Titus | Frank | ▮ |
| Alford | Natasha | ▮ |
| Aumond | Marion | ▮ |
| Bannerman | Erwin | ▮ |
| Davis | Timothy | ▮ |
| Ho | Thang Duc | ▮ |
| Miller | Jociana | ▮ |
| Swafford | Michael | ▮ |
| Torres | Araceli | ▮ |
| Yunker | Dillon | ▮ |
| Carver, Jr. | Gerald | ▮ |
| Gaines | James | ▮ |
| Monk Sr. | Donzo Mark Anthony | ▮ |
| Somerville | Derrick | ▮ |
| Velasquez | Orlandito | ▮ |
| Williams | Derrick | ▮ |
| Worcester | Craig | ▮ |
| Ellis | Durian | ▮ |
| Lavallee (aka Lavalee) | Thomas | ▮ |
| Little | Thomas S. | ▮ |
| Samuel | Chris | ▮ |

| | | |
|---|---|---|
| Wiggins | Sheron R. | ■ |
| Mincey | Brenda | ■ |
| Van Dyke | Anthony | ■ |
| Scott | Cynthia | ■ |
| Jones | Keith | ■ |

